UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA MARIE BRYANT,

                        Plaintiff,

v.

                        Case # 17-CV-518-FPG

                        DECISION AND ORDER

NANCY A. BERRYHILL,
DEPUTY COMMISSIONER OF OPERATIONS,
performing the duties and functions not reserved
to the Commissioner of Social Security,

                        Defendant.

## INTRODUCTION

Linda Marie Bryant brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On March 22, 2013, Bryant protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 157-70. She alleged disability since July 1, 2010 due to arthritis, kidney disease, diabetes, high blood pressure, limited dexterity in the arms and hands, difficulty walking, standing, and sitting, and anxiety. Tr. 197. On June 16, 2015, Bryant and a vocational

---

[1] References to "Tr." are to the administrative record in this matter.

1

expert ("VE") appeared and testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 34-88. On November 17, 2015, the ALJ issued a decision finding that Bryant was not disabled within the meaning of the Act. Tr. 10-22. On April 14, 2017, the Appeals Council denied Bryant's request for review. Tr. 1-6. Thereafter, Bryant commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's decision analyzed Bryant's claim for benefits under the process described above. At step one, the ALJ found that Bryant had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Bryant has osteoarthritis, which constitutes a severe impairment. Tr. 12-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Bryant retains the RFC to perform sedentary work[2] with additional limitations. Tr. 14-21. Specifically, the ALJ found that Bryant can only occasionally reach overhead and climb ramps and stairs; cannot kneel, crouch, or crawl, climb ladders, ropes, or scaffolds, or work around hazards like unprotected heights and moving mechanical parts; and should change position every 45 minutes. Tr. 14.

At step four, the ALJ relied on the VE's testimony and found that Bryant can perform her past relevant work as a secretary. Tr. 21. Accordingly, the ALJ concluded that Bryant was not "disabled" under the Act. Tr. 21-22.

**II.    Analysis**

Bryant argues that remand is required because the ALJ erred in evaluating her impairments at step two, which rendered the RFC assessment not supported by substantial evidence.[3] ECF No. 9-1 at 9-15.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3] In her reply papers, Bryant argues for the first time that the ALJ improperly evaluated the opinions of a consultative psychiatrist and a state agency review psychologist. ECF No. 12. The Court will not address those arguments because Bryant failed to raise them in her initial Motion for Judgment on the Pleadings, and therefore they are procedurally barred. *See Jasen v. Comm'r of Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, at *12 (W.D.N.Y. Aug. 29, 2017)

### A. Step Two

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). It is the claimant's burden to present evidence that establishes the severity of her impairment. 20 C.F.R. § 404.1512(c). The claimant must demonstrate "that the impairment has caused functional limitations that precluded [her] from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) and *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

The ALJ should find an impairment "not severe" if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on the individual's ability to work. *Id.* at 271; *see also* S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985). The SSA's regulations require the ALJ to consider severe and nonsevere impairments when assessing the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2).

"An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015); *Vaughn v. Colvin*, 116 F. Supp. 3d 97, 103 (N.D.N.Y. 2015) ("[B]ecause the [ALJ]

---

(citing *Jones v. Astrue*, No. 11-CV-5757 (FB), 2013 WL 802778, *5 (E.D.N.Y. Mar. 5, 2013) (claimant's argument procedurally deficient when not raised in opening brief) (collecting cases)).

considered [Plaintiff]'s cerebral palsy in determining his RFC . . . the failure to deem the cerebral palsy severe at step two was harmless.").

Here, the ALJ did not discuss Bryant's alleged wrist or hand impairments or her depression at step two, and he classified her anxiety as a nonsevere impairment. He found, however, that she had another severe impairment and thus continued the disability analysis. Tr. 12-14. Because the disability analysis continued, any error at step two is harmless if the ALJ considered all of Bryant's impairments when determining her RFC. Accordingly, the Court will examine whether the ALJ appropriately considered these impairments in his RFC analysis and whether his decision to omit related limitations from the RFC assessment is supported by substantial evidence.

### B. RFC Assessment

#### 1. Wrist and Hand Pain

Bryant argues that, because the ALJ disregarded her wrist and hand impairments at step two, he "mischaracterized" their functional impact and failed to include necessary limitations in the RFC determination. EFC No. 9-1 at 11.

In the Function Report that Bryant completed in connection with her disability benefits application, Bryant indicated that she is left handed and experiences daily pain in her left wrist and hand. Tr. 212, 214-15. She also reported that she cannot write for more than a few minutes due to a ganglion cyst on her left hand. Tr. 208, 212. Bryant testified at her hearing that she had two prior surgeries on her left wrist and that the most recent surgery occurred ten years earlier. Tr. 72. She also testified that once or twice per week she experiences swelling in the palm area of both wrists. Tr. 53. She indicated that she puts rubbing alcohol on the area and "tr[ies] not to use [her] hands for . . . the remainder of that day." *Id.* The ALJ's decision cited Bryant's Function Report and testimony and acknowledged all of the allegations set forth above. Tr. 15-16. The ALJ also

noted that, at a routine appointment on October 9, 2012, Bryant complained of arthritis pain in her wrist. Tr. 365. Similarly, the record reveals that, at another routine appointment on February 24, 2015, she complained of hand pain. Tr. 564. The record otherwise contains scant evidence of Bryant's alleged wrist and hand impairments, and there is no evidence that these impairments impose functional limitations that affect her ability to work.

On August 1, 2013, Bryant underwent a physical examination by consultative examiner Hongbiao Liu, M.D. Tr. 308-11. Dr. Liu noted that Bryant complained of "joint pain, especially [in] the . . . hand." Tr. 308. She demonstrated full range of motion in her wrists bilaterally, intact hand and finger dexterity, and full grip strength bilaterally. Tr. 310. Notably, Dr. Liu opined that Bryant has mild to moderate limitation in prolonged walking, bending, kneeling, and overhead reaching, but he did not diagnose any wrist or hand conditions or opine that Bryant had any related functional limitations. Tr. 311. Dr. Liu's opinion is the only opinion in the record as to Bryant's physical ability to work.

The ALJ acknowledged Dr. Liu's findings and opinion in his decision, and he afforded the opinion "great weight" based on Dr. Liu's knowledge of the SSA disability program and its consistency with the record as a whole. Tr. 20. These are proper reasons to afford great weight to Dr. Liu's opinion,[4] and "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence."). *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

---

[4] *See* 20 C.F.R. §§ 404.1527(c)(6) (noting that the ALJ will give more weight to a medical opinion from a source who understands the SSA's disability programs and evidentiary requirements), 404.1527(c)(4) (noting that the ALJ will give more weight to a medical opinion that is consistent with the record as a whole).

7

Based on the ALJ's discussion of the above allegations and evidence, Dr. Liu's opinion, and the treatment notes of record, the Court finds that the ALJ properly considered Bryant's left wrist and hand impairments and that his decision to omit related limitations from the RFC assessment is supported by substantial evidence.

### 2. Mental Impairments

Bryant also asserts that the RFC assessment should have included mental limitations related to her depression and anxiety. ECF No. 9-1 at 10-12.

The ALJ's decision recognized Bryant's depressive and anxiety symptoms. Tr. 16. Specifically, Bryant testified that about twice a week she gets "hot and sweaty" and has to "leave the room," and that "it takes her about 15 minutes to calm herself down." *Id.* She said that these episodes occur "when there are a lot of people in the room," and therefore she avoids taking the bus, being "closed in," and rooms with more than five people. *Id.*

The ALJ's decision also noted that, at an appointment on October 4, 2013, Bryant was advised to continue Zoloft and seek mental health counseling for anxiety and depression. Tr. 19 (citing Tr. 414). The ALJ also indicated that he reviewed mental health treatment notes from Lakeshore Behavioral Health. Tr. 20 (citing Tr. 473-74). Those notes reveal that Bryant complained of anxiety and "worrying too much." *Id.* Bryant reported a history of anxiety and depression for the last ten years, but has no past treatment other than using Zoloft. *Id.* She indicated that Zoloft helped, but she still had symptoms of anxiety, worry, and depression. *Id.* Bryant described an anxiety attack as getting hot and sweaty and having ruminating thoughts of bad things happening to people she knows, which started after her nephew was killed 11 years ago. *Id.* The ALJ also recognized Bryant's claim that she "took retirement five years ago because she did not feel she could work anymore because of 'anxiety issues.'" *Id.* The ALJ noted that the

Lakeshore Behavioral Health social worker diagnosed Bryant with depressive and anxiety disorders. *Id.*

Aside from the evidence discussed above, which the ALJ recognized in his decision, the record contains little other evidence of Bryant's mental health impairments. The record reveals that medical providers diagnosed Bryant with depression or anxiety on many occasions. *See, e.g.*, Tr. 303, 317, 367, 414, 417, 451, 480, 489-90, 495, 499, 694-95, 701, 704. There is no evidence, however, that her mental health functionally limits her ability to work. In fact, several treatment notes indicate that her depression is "well controlled" and "stable on Zoloft" or other medication. Tr. 414, 451, 468, 565, 701. Similarly, examinations on February 24 and June 7, 2015 found "no anxiety." Tr. 565, 658. Moreover, the psychiatric examination findings in the record are unremarkable and consistently document that Bryant was cooperative and exhibited appropriate mood and affect and normal judgment. Tr. 366, 413, 451, 475, 611, 659, 701.

On September 24, 2013, Bryant underwent a psychiatric examination by consultative examiner Gregory Fabiano, Ph.D. Tr. 314-17. She reported no history of psychiatric hospitalizations or outpatient psychological or psychiatric treatment. Tr. 314. She also reported experiencing some dysphoric moods in the past, but she "denie[d] the presence of any clinically significant levels of depressed mood." *Id.* Bryant indicated that he had "some anxiety," especially related to her son, grandson, and family. Tr. 314-15.

Dr. Fabiano's mental status examination revealed that Bryant was cooperative and her manner of relating, social skills, and overall presentation were adequate. Tr. 315. Her thought processes were coherent and goal-directed, her affect was appropriate, she was oriented to person, place, and time, her attention and concentration were intact, and her insight and judgment were good. Tr. 315-16. Bryant's recent and remote memory skills were "[m]ildly impaired, perhaps

due to some anxiety or nervousness in the evaluation." Tr. 316. Dr. Fabiano diagnosed Bryant with anxiety. Tr. 317.

Dr. Fabiano opined that Bryant has no limitations following and understanding simple directions and instructions, performing simple and complex tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, making appropriate decisions, or relating adequately with others. Tr. 316. He also opined that Bryant "appears to have some mild limitations in her ability to appropriately deal with stress, due to anxiety-related symptoms." Tr. 316. Dr. Fabiano concluded that the results of Bryant's examination appeared consistent with psychiatric problems but are not "significant enough to interfere with [her] ability to function on a daily basis." Tr. 317.

The ALJ acknowledged Dr. Fabiano's findings and opinion in his decision, and he afforded the opinion "great weight" based on Dr. Fabiano's knowledge of the SSA disability program, his detailed examination of Bryant, and its consistency with the opinion of state agency psychiatric consultant Joel Straussner, Ph.D. Tr. 19-20. These are proper reasons to afford great weight to Dr. Fabiano's opinion,[5] and "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber*, 2016 WL 4411337, at *7.

On October 1, 2013, state agency psychiatric consultant Dr. Straussner reviewed the medical evidence of record. Tr. 90-98. He found that Bryant had no restrictions in her daily activities, no difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, and pace, and no repeated episodes of decompensation each of

---

[5] *See* 20 C.F.R. §§ 404.1527(c)(6) (noting that the ALJ will give more weight to a medical opinion from a source who understands the SSA's disability programs and evidentiary requirements), 404.1527(c)(1) (noting that the ALJ will give more weight to a medical opinion from a source who examined the claimant), 404.1527(c)(4) (noting that the ALJ will give more weight to a medical opinion that is consistent with the record as a whole).

extended duration. Tr. 93. Dr. Straussner concluded that the medical evidence established anxiety as a nonsevere impairment that did not significantly interfere with Bryant's ability to function on a daily basis. Tr. 93-94.

The ALJ acknowledged Dr. Straussner's findings and opinion in his decision, and he afforded the opinion "great weight" based on Dr. Straussner's knowledge of the SSA disability program, his detailed review of the record, and its consistency with Dr. Fabiano's opinion. Tr. 20. These are proper reasons to afford great weight to Dr. Straussner's opinion,[6] and the ALJ was entitled to rely on this opinion in creating the RFC assessment. *Barber*, 2016 WL 4411337, at *7.

Based on the ALJ's discussion of the above allegations and evidence, the treatment notes of record, and Drs. Fabiano and Straussner's opinions, the Court finds that the ALJ properly considered Bryant's mental health impairments and that his decision to omit related limitations from the RFC assessment is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion (ECF No. 10) is GRANTED and Plaintiff's Motion (ECF No. 9) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 23, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[6] *See* 20 C.F.R. §§ 404.1527(c)(6) (noting that the ALJ will give more weight to a medical opinion from a source who understands the SSA's disability programs and evidentiary requirements), 404.1527(c)(3) (noting that the ALJ will give more weight to a non-examining medical source's opinion when he considers all of the pertinent evidence of the individual's claim), 404.1527(c)(4) (noting that the ALJ will give more weight to a medical opinion that is consistent with the record as a whole).